UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SNAPOLOGY JEWELRY, LLC, ) <br> Plaintiff, ) <br> ) <br> -v- ) <br> ) <br> LDC, INC., ) <br> Defendant. ) <br> _____ ) | No. 1:16-cv-1036 <br><br> HONORABLE PAUL L. MALONEY |

## OPINION AND ORDER

This matter is before the Court on Defendant LDC's motion to dismiss or transfer. (ECF No. 17.) Defendant argues, among other things, that Plaintiff Snapology surreptitiously sought to file this declaratory action in Michigan while inducing Defendant to delay its own intentions to file an infringement action in Rhode Island.

The Court agrees. Plaintiff filed what is known as an "anticipatory" declaratory judgment action that was irrefutably improper under the circumstances. Two independent bases justify dismissing this action without prejudice to allow Plaintiff to file a counter-complaint in the United States District Court for the District of Rhode Island: (1) the "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district," *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982); and (2) the Court's "[d]iscretion not to hear a declaratory judgment action, even [though] jurisdiction exists," *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). Accordingly, this action must be dismissed without prejudice.

1

"As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).[1] Application of this generally recognized doctrine of federal comity necessitates that "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Kerotest Mfg. Co.*, 342 U.S. at 183–84; *accord. Medtronic*, 678 F.3d at 95.

"Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action. However, this 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Medtronic*, 678 F.2d at 94–95.

"Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping. *Zide*, 16 F. App'x at 437 (citing *Alltrade, Inc. v. Unwield Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) and *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 972 (3d. Cir. 1988)). Similarly, "[d]iscretion not to hear a declaratory judgment action, even where jurisdiction exists, is undisputed"—and discretion in that vein is particularly appropriate where plaintiffs "engage[]

---

[1] There's no question that the case here and the case in Rhode Island will not proceed in parallel fashion. *See LDC, Inc. v. Snapology*, No. 1:16-cv-463, slip op. at *3 (D.R.I. Feb. 3, 2017) (staying the case "pending the outcome of the Motion to Dismiss currently before the United States District Court for the Western District of Michigan"). Nor should it. The solution to these circumstances requires "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation . . . ." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952); *see* JAMES P. GEORGE, *Parallel Litigation*, 51 BAYLOR L. REV. 769, 786 (1999) ("Federal law disfavors simultaneous federal litigation and distinguishes it from state-federal duplication.").

in procedural fencing." *Zide Sport Shop of Ohio, Inc.*, 16 F. App'x at 437.[2]

In *Zide*, the Sixth Circuit affirmed a district court's reconciliation and application of an exception to the first-to-file rule and the declaratory judgment standard. *Id.* There, the plaintiffs misled defendants by going along with written negotiations while proceeding to file a lawsuit. *Id.* The plaintiffs knew if a settlement was not reached, the defendants would seek legal recourse. *Id.* Plaintiffs filed a lawsuit the day before a negotiation period expired. *Id.* The Sixth Circuit quoted the district court's findings, and upheld dismissal:

> If Plaintiffs' conduct was not mere deceptive gamesmanship, then they would have informed Defendants that they did not intend to make another settlement offer and would prefer to seek a judicial resolution. If it was not gamesmanship, Plaintiffs would not have filed suit in this Court during the extension period they requested . . . .

*Id.* at 438.

The facts in this case closely resemble those in *Zide* and a host of other cases. *See, e.g., Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987); *Teledyne Tech. Inc. v. Harris Corp.*, 2011 WL 2605995, at *3 (C.D. Cal. July 1, 2011); *NSI Corp. v. Showco, Inc.*, 843 F. Supp. 642, 646 (D. Or. 1994).

On June 14, 2016, LDC's counsel sent a demand letter to Snapology. (ECF No. 18-3 at PageID.255.) Two weeks later, LDC's counsel engaged in settlement with Snapology's counsel on the telephone regarding the claims asserted by LDC. (*Id.*) Snapology's counsel led LDC's counsel to believe "the parties had reached an understanding of working toward a prompt out of court settlement." (*Id.*) Correspondence continued. On July 8, 2016,

---

[2] Technically, the suit in the District of Rhode Island was filed before the suit was removed here. However, since the original complaint was filed in Muskegon County Circuit Court, this action was filed first.

3

LDC's counsel sent further correspondence to Snapology's counsel, giving ten days to respond "if [Snapology] is still willing to attempt to resolve this matter voluntarily." (*Id.* at PageID.269.) On July 15, 2016, Snapology's counsel responded: "I have a meeting with my client on Monday to review and respond to your demand. I will follow up by Tuesday[]"—roughly within the ten-day timeframe. (*Id.*)

However, Snapology did not "respond to [LDC's] demand," as promised, on Tuesday; rather, on that very same day, it rushed to file a declaratory judgment action in Muskegon County Circuit Court (before removal here). (*See* ECF No. 1-1 at PageID.9.)

LDC's argument remains factually and legally unrebutted by Snapology.[3]

Snapology led LDC to believe that settlement discussions were ongoing, while simultaneously and surreptitiously preparing its Complaint which it filed on the same day it said it would respond to LDC's July 8, 2016 demand letter. Snapology never informed LDC that the settlement that LDC thought the parties were working towards was off.

The Court need not wade into the thicket of personal jurisdiction.[4] Suffice it to say that on this record, a much stronger case exists for a court in Rhode Island to exercise jurisdiction over Snapology than a court in Michigan to exercise jurisdiction over LDC.[5]

---

[3] Snapology does not include a single sentence in its brief addressing this issue. (*See* ECF No. 19.)

[4] In certain circumstances, the Court would have to determine whether personal jurisdiction over a defendant exists first. *See Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980) (noting a transfer under § 1404(a) may not be granted when the district court lacks personal jurisdiction over a defendant). However, a court may dismiss a case on comity grounds without first addressing personal jurisdiction. *See Medtronic*, 678 F.2d at 95 n.2 ("Because the district court reached no conclusion as to its personal jurisdiction over Med Rel, we do not consider this contention.").

[5] This Court would likely need to hold an evidentiary hearing to determine whether personal jurisdiction exists. On the present record, the Court suspects that Snapology would be unable to carry its burden to establish, by a preponderance of the evidence, that personal jurisdiction over LDC exists. *See, e.g., Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (holding that "the mere existence of a contract

4

Likewise, the Court need not consider a transfer under § 1404(a), though the "interests of justice" (along with the bulk of witnesses and evidence) suggest Rhode Island is the appropriate venue for the same reasons why this Court declines to exercise jurisdiction.[6] *See Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037 (Fed. Cir. 1995) (upholding the dismissal of a first-filed suit where the district court had considered the balance of convenience *and* the anticipatory nature of the suit); *Raz Imports, Inc. v. Luminara Worldwide, LLC*, 2015 WL 6692107, at *3 (N.D. Tex. Nov. 3, 2015) (citing the fact the suit was anticipatory as a factor for transferring a case under § 1404(a)); *Beach Sales & Eng'g, LLC v. Telebrands Corp.*, 2015 WL 1930337, at *3 (N.D. Ohio Apr. 28, 2015) (same).

---

between [the defendant] and an Ohio citizen for seventeen months is insufficient to confer personal jurisdiction over [the defendant]").

In this case, "no physical ties" to Michigan can be attributed to LDC. "LDC has never had a place of business located in Michigan or owned or leased property or any other assets located in Michigan"; "LDC has never had officers, directors, agents, or employees in Michigan"; "LDC has never maintained a bank account or telephone listing in Michigan"; "LDC has never incurred or paid taxes in Michigan and has never been licensed or applied to transact business in Michigan"; "LDC is not incorporated in Michigan and has not appointed a registered agent in Michigan." (ECF No. 18-2 at PageID.242.) Moreover, LDC's marketing "consists primarily in attending trade shows and publishing advertisements in trade magazines." And "LDC does not attend, and has never attended, a trade show in Michigan. Nor has it ever published advertisements in any trade magazines published in Michigan." (*Id.* at PageID.243.) None of the events leading up to contract formation support LDC's connection to Michigan, and all of the events occurred in Rhode Island. For example, "[o]n several occasions," Snapology's "owners traveled to Rhode Island to meet with LDC regarding the jewelry design process." (ECF No. 18-2 at PageID.241.) The only connection LDC has to Michigan is the contractual relationship it formed with Snapology that gave rise to this lawsuit; that contractual relationship gave birth to a single purchase order in a relatively low, but not insignificant, amount. In short, none of the relevant events or complained-of conduct during the relationship occurred in Michigan. Thus, the likelihood that this case would require ultimate resolution in Rhode Island in any event remains high. *See Rowlette*, 228 F.3d at 722 ("[T]he parties' actions 'in the negotiation and performance of the . . . agreement' are more important factors to consider than the duration of the contract in determining whether this case 'should be subject to suit in [Michigan].'"); *see also Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 461 (1st Cir. 1990) (noting Rhode Island's long-arm statute is "coextensive with the outermost limits of the Due Process Clause").

[6]    Generally, courts in the Sixth Circuit weigh several factors. *See, e.g., Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *see also, e.g., Amoco Oil Co.*, 90 F. Supp. 2d at 959 (citing *Coffey*, 796 F.2d at 219) ("It is in the sound discretion of the trial judge to determine the weight accorded to each factor."). "As the permissive language of the statute suggests, district courts have 'broad discretion' to determine when party 'convenience' *or* 'the interests of justice' make a transfer appropriate. Only when the district court 'clearly abuse[s] its discretion' in balancing these factors will we reverse." *Reese*, 574 F.3d at 320 (emphasis added) (citing *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)).

This action is **DISMISSED WITHOUT PREJUDICE.** Judgment will enter separately.

**IT IS SO ORDERED.**

Date: May 4, 2017         /s/ Paul L. Maloney
                          Paul L. Maloney
                          United States District Judge